UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
JANE DOE,

                        Plaintiff,

                    -v.-

BOYS & GIRLS CLUB OF THE CAPITAL
AREA, INC.; DAVID GORDON; and
PAUL DUNN

                      Defendants.
------------------------------------------------------X

Civil Action No.: 1:25-cv-00314 (LEK/DJS)

**COMPLAINT**

Plaintiff, Jane Doe, by her attorneys, EISENBERG & BAUM, LLP, as and for her Complaint against Defendant Boys & Girls Club of the Capital Area, David Gordon, and Paul Dunn (collectively referred to as "Defendants"), states as follows:

## THE PARTIES

1. Plaintiff, Jane Doe (hereinafter referred to as "Plaintiff"), is an individual residing in Schenectady, New York.

2. Upon information and belief, Defendant Boys & Girls Club of the Capital Area, Inc. ("BGCCA") is a domestic not-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York.

3. Upon information and belief, BGCCA owns, operates, and/or manages the Boys and Girls Albany Clubhouse located at 21 Delaware Ave, Albany, NY 12210.

4. Upon information and belief, Defendant David Gordon is an individual residing in Albany, New York.

5. Upon information and belief, Defendant Paul Dunn is an individual residing in Albany, New York.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law. This Court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants have sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced, and the acts and omissions giving rise to this Complaint occurred within this District.

**STATEMENT OF FACTS**

8. The BGCCA is non-profit corporation with a mission "To provide a fun, safe, supervised environment for recreational and educational activities where all boys and girls, especially those who need us the most, can develop self-esteem and the qualities needed to become caring, responsible citizens."[1]

9. BGCCA's website further advertises that it provides "trained professional staff" as "positive adult mentors and role models" to "help young people succeed in school, stay healthy, learn important life skills, pursue interests in the arts and sports, and explore vocational choices."[2]

10. Despite BGCCA's mission to provide a safe haven for local children to develop and grow, Plaintiff's workplace at BGCCA was pervaded with rampant sexual assault and sexual harassment perpetrated by her superiors—BGCCA's Program Manager of the Albany Clubhouse, David Gordon, and its Gun and Violence Prevention Director, Paul Dunn.

---

[1] https://bgc-albany.org/#:~:text="To%20provide%20a%20fun%2C%20safe,become%20caring%2C%20responsible%20citizens.
[2] *Id*.

2

11. Plaintiff began her employment at BGCCA as coordinator providing cosmetology lessons to teenage children.

12. During her employment, Plaintiff reported to Mr. Gordon; however, when Mr. Gordon was absent, Plaintiff would report to Mr. Dunn.

13. In February 2023, Plaintiff was working at the BGCCA's Albany clubhouse and approached Mr. Gordon about tickets to attend an event for the 52nd annual legislative conference of the New York State Association of Black, Puerto Rican ,Hispanic & Asian Legislatives.

14. In response to Plaintiff's inquiry for tickets, Mr. Gordon told her that she could only go if she attended as his date. Plaintiff was uncomfortable by Mr. Gordon's comment and attempted to rebuff it with a joke. However, Mr. Gordon was not dissuaded.

15. In March 2023, Mr. Gordon showed up uninvited to the funeral for Plaintiff's brother.

16. Later on, Mr. Gordon sent Plaintiff sexually harassing text messages such as "I want you."

17. In or around July 2023, Mr. Gordon summoned Plaintiff into his office.

18. While Plaintiff was inside his office, Mr. Gordon began showing her a flask that was gifted to him by Mr. Dunn as a wedding present. During this interaction, Mr. Gordon took a drink of liquor in the flask and offered it to Plaintiff, who declined his offer to drink at work.

19. Mr. Gordon then began to grope Plaintiff's breast over her shirt and continued by grabbing her breast and exposing it. Mr. Gordon then proceeded to lick Plaintiff's breast and asked her to perform oral sex on him.

20. Plaintiff was shocked and offended by Mr. Gordon's unwanted sexual conduct and refused to perform oral sex on him.

21. However, Mr. Gordon was not deterred by Plaintiff rebuffing his sexual advances as he offered her $500 to have sexual intercourse with him.

22. In addition to Mr. Gordon's sexual assault and sexually harassing conduct, Plaintiff was subjected to repeated acts of sexual harassment and sexual assault by Mr. Dunn.

23. During her employment, Mr. Mr. Dunn also groped Plaintiff's buttocks and vagina from behind.

24. Mr. Dunn's sexual misconduct escalated to the point of him attempted to forcibly have sex with Plaintiff at BGCAA warehouse. Indeed, Mr. Dunn pulled out his penis at the workplace and attempted to push himself onto Plaintiff and penetrate her.

25. Furthermore, on several occasions, Mr. Dunn pulled down his pants and ejaculated on Plaintiff.

26. Plaintiff was shocked and offended every time, however, she was afraid to say or do anything given that Mr. Dunn is a large, intimidating man.

27. Additionally, Mr. Dunn sent Plaintiff numerous, sexually harassing text messages that included references to his sexual assaults against her such as: "Drive safe and I want more of you and you felt amazing I almost slipped in," "Ur ass is soft," "I want to put it in u," "I want to glaze all of it next time and suck on you sexy," "So tomorrow can I glaze that ass," "U want me to bust on that ass again," "That ass looking real juicy," "U wanna sit on my lap," "I love busting on your ass."

28. Plaintiff did not have any relationship with Mr. Dunn and never wanted to or consented to any sexual intercourse with him.

29. Following these numerous instances of sexual harassment and assault, Plaintiff worked up the courage to report Gordan and Dunn to BGCCA's Human Resources to prevent

4

further sexual misconduct against her as well as potentially preventing children from being exposed to the sexual misconduct.

30. BGCCA purportedly conducted an internal investigation. During this purported investigation, Mr. Dunn submitted edited texts showing him in the most favorable light. However, Plaintiff rebutted his text messages with a submission of his sexually harassing texts. Upon information and belief, Mr. Dunn promptly resigned after BGCCA received some of the text messages and there was no further investigation into his misconduct.

31. Furthermore, BGCCA's investigation did not result in a safe working environment for Plaintiff.

32. BGCCA assured Plaintiff that she would no longer have to work with Mr. Gordon, however, due to the established rapport held by Mr. Gordon, Plaintiff would inevitably encounter him.

33. As a result of this, Plaintiff continued to feel unsafe and uncomfortable at work forcing her to resign.

34. Accordingly, BGCCA constructively discharged Plaintiff.

35. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on July 3, 2024, and received a notice of right to sue on February 5, 2025.

**FIRST CAUSE OF ACTION**
**(Sexual Harassment in violation of Title VII of the Civil Rights Act – Against BGCCA)**

36. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

37. Title VII of the Civil Rights Act of 1964, as amended 42. U.S.C. § 2000e *et seq.*, prohibits sexual harassment in the workplace.

5

38. Defendant BGCCA's actions and inactions created a work environment that was objectively and subjectively offensive, severe and pervasive, and based on Plaintiff's gender, sex, and sexual orientation as set forth above.

39. Plaintiff deserved to retain her employment free of sexual harassment with Defendant BGCCA and did not do anything to merit discipline. Nevertheless, Defendant BGCCA denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace based on sexual harassment that was imposed upon him by the conduct of its employees and managers, of which they were well aware of and without any non-discriminatory or non-harassing basis therefor.

40. Defendant BGCCA's actions were taken under circumstances giving rise to an inference of discrimination.

41. The conduct complained of above was so sever and pervasive as to alter the conditions of Plaintiff's employment; specifically, by forcing her to resign.

42. As a direct and proximate result of Defendant BGCCA's acts and omissions, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**SECOND CAUSE OF ACTION**
**(Gender discrimination in violation of Title VII of the Civil Rights Act – Against BGCCA)**

43. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

44. Title VII of the Civil Rights Act of 1964, as amended 42. U.S.C. § 2000e *et seq.*, prohibits gender discrimination in the workplace.

45. Defendant BGCCA's actions and inactions created a work environment that was objectively and subjectively offensive, severe and pervasive, and based on Plaintiff's gender, sex, and sexual orientation as set forth above.

46. Plaintiff deserved to retain her employment free of gender discrimination with Defendant BGCCA. Nevertheless, Defendant BGCCA denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace exposing Plaintiff to gender discrimination that was imposed upon her by the conduct of its employees and managers, of which they were well aware of and without any non-discriminatory or non-harassing basis therefor.

47. Defendant BGCCA's actions were taken under circumstances giving rise to an inference of discrimination.

48. The conduct complained of above was so sever and pervasive as to alter the conditions of Plaintiff's employment; specifically, by forcing her to resign.

49. As a direct and proximate result of Defendant BGCCA's acts and omissions, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

### THIRD CAUSE OF ACTION
**(Sexual Harassment: Hostile Work Environment in violation of the New York Human Rights Law – Against All Defendants)**

50. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

51. Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* prohibits sexual harassment in employment. Defendants were Plaintiff's employers within the meaning of those laws.

52. Plaintiff deserved to retain her employment free of sexual harassment with Defendant BGCCA. Nevertheless, Defendant BGCCA denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace based on sexual harassment, that was imposed upon her by the conduct of Paul Dunn and David Gordon, of which it was aware of and without any non-discriminatory basis therefor.

53. Defendants' actions were taken under circumstances giving rise to an inference of discrimination.

54. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered inferior terms, conditions, and privileges of employment. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**FOURTH CAUSE OF ACTION**
**(Gender Discrimination in violation of the New York Human Rights Law – Against All Defendants)**

55. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

56. Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* prohibits gender discrimination in employment. Defendants were Plaintiff's employer within the meaning of those laws.

8

57. Plaintiff deserved to retain her employment free of gender discrimination with Defendants and did not do anything to merit discharge or discipline. Nevertheless, Defendants denied Plaintiff the benefit of employment, including all favorable conditions and emoluments thereof, and constructively discharged her, because of hostility to Plaintiff based on her gender (female) and without any non-discriminatory basis therefor.

58. Defendants' actions were taken under circumstances giving rise to an inference of discrimination.

59. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered inferior terms, conditions, and privileges of employment. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**FIFTH CAUSE OF ACTION**
**(Retaliation in Violation of New York's Whistleblower Labor Laws – Against All Defendants)**

60. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

61. Defendants violated New York's Whistleblower Labor Laws, N.Y. Lab. Law § 740(2).

62. Plaintiff was an "employee" of Defendant BGCCA as defined under N.Y. Lab. Law § 740 1(a).

63. Defendant BGCCA was Plaintiff's "employer" as defined under N.Y. Lab. Law § 740(1)(b).

64. Paul Dunn and David Gordon were "supervisors," as the term is defined pursuant to N.Y. Lab. Law § 740(1)(f).

9

65. Plaintiff disclosed to Defendants' supervisors of an activity, policy, or practice of Defendants that Plaintiff reasonably believed is in violation of law, rule, or regulation or reasonably believed poses a substantial and specific danger to the public health or safety. N.Y. Lab. Law § 740 2(a).

66. As a result of Defendants violation of N.Y. Lab. Law § 740, Plaintiff suffered the harms and damages alleged above in this Complaint.

67. Defendants' unlawful acts have caused Plaintiff economic damages in the form of lost income, benefits, and consequential damages in an amount to be proved at trial.

68. Defendants' unlawful acts have caused Plaintiff noneconomic damages in the form of emotional distress, in an amount to be proved at trial.

69. Pursuant to N.Y. Lab. Law § 740(4) & (5), Plaintiff is entitled to bring a civil action against Defendants in a competent jurisdiction, and the jurisdiction can order payment of liquidated damages, costs and reasonable attorneys' fees incurred.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief against all Defendants:

70. Enter a declaratory judgment, stating that Defendant BGCCA's practices, policies, and procedures subjected Plaintiff to sexual harassment, gender discrimination, and retaliation, making her work environment a hostile workplace in violation of Title VII of the Civil Rights Act of 1964, as amended 42. U.S.C. § 2000e et seq. and Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law §§ 290 et seq.

71. Enjoin Defendant BGCCA from implementing or enforcing any policy, procedure, or practice that denies employees of any gender and/or sexuality the full and equal enjoyment of

Defendants' benefits, pay increases, promotional opportunities, and advancement within the company, and specifically enjoin them to take the following steps to prevent sexual harassment, including but not limited to hostile work environment and gender discrimination in its workplace:

    i. to develop, implement, promulgate, and comply with a policy providing for the training of each and every employee in the civil rights of employees in the workplace, including but not limited to gender and sexual harassment, discrimination, and retaliation;

    ii. to develop, implement, promulgate, and comply with a policy providing for reporting and investigation of complaints regarding civil rights abuses, including but not limited to gender and sexual harassment, discrimination, and retaliation;

    iii. to develop, implement, promulgate, and comply with a policy providing for disciplinary measures to be imposed upon any person found responsible for civil rights abuses, including but not limited to gender and sexual harassment, discrimination, and retaliation.

72. On all Causes of Action, enter judgment against the named Defendants and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, liquidated damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable, and proper.

Dated:    New York, New York
             March 7, 2025

                                                      EISENBERG & BAUM, LLP

By: /s/ Reyna Lubin
Eric M. Baum, Esq.
Reyna Lubin, Esq.
Attorneys for Plaintiff
24 Union Square East, Penthouse
New York, New York 10003
(212) 353-8700